UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TODD SUTTON, )<br>)<br>Defendant. ) | Case No. 10-CR-20048 |

## OPINION

On June 9, 2010, Defendant, Todd Sutton, was indicted on one count of possession of 50 grams or more of a mixture and substance containing cocaine base (crack) with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii). On November 22, 2010, Defendant filed this Motion to Suppress (#21) and an evidentiary hearing was held before the court on January 28, 2011. Defendant filed his Statement of Facts and Conclusions of Law (#26) on February 11, 2011. The government filed its Response (#27) on March 9, 2011, and Defendant filed his Reply (#29) on March 25, 2011. For the following reasons, Defendant's Motion to Suppress (#21) is DENIED.

BACKGROUND FACTS

At the evidentiary hearing, the only witness presented by either side was government witness Kristopher Lombardi, a Special Agent with the Kankakee Metropolitan Enforcement Group (KAMEG). He testifies as follows.

On May 2, 2010, KAMEG Special Agent Lombardi received information from a confidential informant (CI) that the CI had recently seen one ounce of cocaine possessed by "Cap" inside apartment 1W at 1525 West Station Street, Kankakee, Illinois. The CI was working with KAMEG to obtain leniency on pending state drug charges and had previously

provided information that led to the seizure of cocaine and arrest of one individual. The CI was familiar with cocaine and its packaging because the CI had sold cocaine in the past. Lombardi drove the CI past the apartment building and the CI identified the building as the one where he saw the defendant in possession of the cocaine. Lombardi ran the name "Cap" through the Kankakee County New World Records Database and the name came back as Defendant, Todd S. Sutton. Lombardi showed the CI a picture of Defendant and the CI identified the Defendant as "Cap." Based on information received from the CI, Lombardi believed that Nikaya Foster was Defendant's girlfriend. Lombardi ran Foster's name through the Database and her address came back as apartment 1W 1525 West Station Street in Kankakee. It was later learned, after Defendant's arrest, that Foster was Defendant's cousin, not his girlfriend.

On May 2, 2010, Lombardi took the CI before a judge in Kankakee County to sign a "John Doe" affidavit in support of the issuance of search warrant. The affidavit read, in pertinent part:

> "Within the past 10 days from May 2nd, 2010. I have seen approximately one ounce of cocaine inside the residence located at 1525 West Station St. Apt. 1W, Kankakee, IL. I am familiar with cocaine and the way it is packaged for sale because I have sold cocaine in the past. I am not currently under the influence of alcohol or drugs.
>
> At this time, I am a Confidential Informant Source for KAMEG. I am using an assumed name for fear that may receive bodily harm for the information that I have provided for KAMEG."

Lombardi filled out his own affidavit in support of the issuance of a search warrant, reiterating (1) CI's information about witnessing drugs at the apartment in the past 10 days; (2)

that CI is an informant with KAMEG working for consideration on a pending criminal charge who has provided reliable information in the past six months that has led to the arrest of one individual and the seizure of cocaine; (3) that on May 2, 2010, CI identified the premises to KAMEG as being 1525 W. Station, Apt. 1W, and that the person who CI had seen in possession of cocaine in the residence is a black male known as Cap, who was revealed by the Database to be Todd S. Sutton, Defendant, and who was identified as such by CI via a Kankakee County mugshot; and (4) that Lombardi knows Cap's girlfriend to be Nikaya Foster, whose address is revealed to be 1525 W. Station St., Apt. 1W, Kankakee. The judge issued the warrant at 8:40 pm, May 2, 2010, and it was executed that same evening.

Prior to executing the warrant, agents observed Defendant drive a white Chevy Caprice and park it in front of the apartment building at 1525 West Station St. Agents observed Defendant get out of the vehicle and begin walking towards the building. They then arrested him for driving on a revoked license. They informed Defendant they had a search warrant for the apartment (1W) and Defendant told them "I don't live here." A search of Defendant incident to arrest found keys that unlocked apartment 1W. During the search of the residence, agents located: (1) 63 grams of crack in a plastic bag on the top shelf of the closet of the northwest bedroom; (2) a digital scale with white powder residue in the kitchen and items that are frequently used in baking powder cocaine into crack; and (3) a handwritten letter on the kitchen table referring to Defendant as "Cap"; and (4) in the living room, on the computer, which they searched for drug dealing related documents, a video depicting Defendant in the living room of the 1W apartment.

Upon his arrest and transport to Jerome Combs Detention Center, Defendant provided agents with Foster's telephone number and requested they tell her they had searched the

apartment. Upon contacting Foster, she informed them that Defendant was her cousin, not her boyfriend.

ANALYSIS

Defendant raises two issues in his Statement of Facts and Conclusions of Law: (1) the two affidavits in support of the search warrant did not contain probable cause; and (2) that the good faith exception, as articulated in <u>United States v. Leon</u>, 468 U.S. 897 (1984), does not apply.

First, Defendant argues that the affidavits in support of the warrants "fell far short of establishing probable cause." Specifically, Defendant claims (1) the warrant does not provide sufficient facts on its face to justify a search of the apartment and (2) the affidavits in support of the warrants failed to provide any reliable evidence as to the CI's credibility or to provide "sufficiently specific information on what informant actually observed." However, Defendant does not actually make any argument about the deficiency of the warrant itself. Rather, Defendant only argues as to the deficiency of the affidavits in support, so the court will confine its analysis to the affidavits.

When a search is authorized by a warrant, great deference is given to the issuing judge's conclusion that probable cause has been established. <u>United States v. Sims</u>, 551 F.3d 640, 644 (7th Cir. 2008). The court will defer to the issuing judge's initial probable cause finding if there is "substantial evidence in the record" that supports his decision. <u>Sims</u>, 551 F.3d at 644, citing <u>United States v. Koreth</u>, 312 F.3d 862, 865 (7th Cir. 2002). A search warrant affidavit establishes probable cause when "it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." <u>Sims</u>, 551 F.3d at 644, citing <u>United States v. Mykytiuk</u>, 402 F.3d 773, 776 (7th Cir. 2005). However, a judge may not rely solely

4

upon "conclusory allegations" or a "bare bones" affidavit when issuing a warrant. Sims, 551 F.3d at 644.

When, as here, the affidavit is supported by an informant's tip, the court is to examine the totality of the circumstances to determine probable cause. Sims, 551 F.3d at 644. This encompasses several factors, which include: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of events and the police officer's application for the search warrant. Sims, 551 F.3d at 644. "Significantly, we also consider whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity." Sims, 551 F.3d at 644.

There was probable cause for the warrant to issue. First, the court notes that during the evidentiary hearing in this case, it had the opportunity to observe the manner and demeanor of the testimony of KAMEG Special Agent Kristopher Lombardi. After hearing Agent Lombardi's testimony, the court finds him to be a credible witness.

Lombardi testified that the police corroborated the CI's statements through showing him the Kankakee County mugshot of Defendant. The CI confirmed that Defendant was "Cap," who he had seen with the drugs at the apartment. They also drove to the location provided by the CI as where he had seen Cap with the drugs, and the CI confirmed that was the correct location. As to the second factor, the CI was present, in person, at the apartment, and witnessed Defendant in possession of the drugs. For the third factor, while the affidavit was not supremely detailed, it did contain enough information as to the apartment where the drugs were seen and the person who was seen in possession of the drugs. The CI also stated it was an ounce of cocaine, more

5

than personal use, and he was familiar with the packaging and use of cocaine because he has dealt the drug in the past.

Defendant places a lot of emphasis on the last factor, claiming that because it was ten days between the events described by the CI and the issuing of the warrant, the probable cause was "stale." As noted, the time interval is just one factor among many. While ten days is longer than the 72-hour intervals in the cases cited by the government in their earlier (#22) Response, and it was just one incident of seeing drugs in the apartment, it does not necessarily make the probable cause stale. As noted by Lombardi, it is not known for sure if it was ten days or less, as the affidavit stated "within 10 days" from the May 10 warrant issuance. Based on the totality of the circumstances, there was sufficient probable cause for the warrant to issue.

Defendant also argues that the affidavit does not contain probable cause because the CI is unreliable. However, here the CI swore out an affidavit containing details about (1) where the drugs were seen; (2) Defendant's possession of the drugs; (3) the amount of drugs and how they were packaged; and (4) his own experience with drugs as a drug dealer. Further, the CI personally appeared before the issuing judge, allowing the judge to observe first hand the CI's knowledge, information, and sincerity, which is a significant factor in determining probable cause. Sims, 551 F.3d at 644. Defendant also argues that the warrant contained a piece of false information- namely that Foster was Defendant's girlfriend, not his cousin. However, this really is a de minimis example of false information. It had no real bearing on the probable cause involved. Whether Foster was Defendant's girlfriend or cousin, the relationship was still a close one.

As the court has determined there was sufficient probable cause for the warrant to issue, it need not address the Leon and good faith exception argument.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion to Suppress (#21) is DENIED.

(2) This case remains set for a status conference in Courtroom A on April 27, 2011, at 1:00 pm.

ENTERED this 31st day of March, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE